BRUNER v LEAGUE GENERAL INSURANCE COMPANY

Docket No. 94304. Submitted April 27, 1987, at Detroit. Decided June 22, 1987.

Plaintiffs, Thomas L. Bruner and Lora Bruner, instituted an action in the Oakland Circuit Court after defendant, League General Insurance Company, refused to pay uninsured motorist benefits after Lora Bruner was struck and injured by a hit-and-run driver. At the time of the accident, Lora Bruner was insured under a no-fault automobile policy issued by defendant to her husband, Thomas Bruner. The policy did not include uninsured motorist coverage. The trial court, James S. Thorburn, J., issued an order granting defendant's motion for summary disposition. Plaintiffs appealed.

The Court of Appeals *held:*

Something more than the standard policyholder-insurer relationship is required in order to create a question of fact as to the existence of a special relationship obligating the insurer to advise the policyholder about his insurance coverage. There must be, in a long-standing relationship, some type of interaction on a question of coverage, with the insured relying on the expertise of the insurance agent to the insured's detriment. Here, plaintiffs have not alleged facts suggesting that their relationship with defendant was anything other than a standard one.

Affirmed.

1. INSURANCE — AGENT'S DUTY TO ADVISE INSURED.

An insurance agent generally does not have an affirmative duty to advise a client regarding the adequacy of a policy's coverage; instead, the insured is obligated to read the policy and raise questions concerning coverage within a reasonable time after issuance.

2. INSURANCE — AGENT'S DUTY TO ADVISE INSURED.

An insurer's duty to advise its insured regarding the adequacy of

REFERENCES

Am Jur 2d, Insurance §§ 138 *et seq.*

Liability of insurance agent, for exposure of insurer to liability, because of failure to fully disclose or assess risk or to report issuance of policy. 35 ALR3d 821

a policy's coverage may arise when a special relationship exists between the insurance company or its agent and the policyholder; something more than the standard policyholder-insurer relationship is required in order to create such a special relationship; there must be, in a long-standing relationship, some type of interaction on a question of coverage, with the insured relying on the expertise of the insurance agent to the insured's detriment.

*Clark, Hardy, Lewis, Pollard & Page, P.C.* (by *Richard E. Kroopnick*), for plaintiffs.

*Zweig & Lane, P.C.* (by *Timothy R. Van Dusen* and *Donna A. Belletini*), for defendant.

Before: D. F. WALSH, P.J., and WAHLS and J. R. GIDDINGS,* JJ.

PER CURIAM. Plaintiffs, Thomas and Lora Bruner, appeal as of right from a July 16, 1986, order of the Oakland Circuit Court granting summary disposition in favor of defendant, League General Insurance Company. We affirm, concluding that the trial judge did not err in determining that there was no special relationship between the parties such that defendant had a duty to advise plaintiffs about the adequacy of their insurance coverage.

The facts, although not fully developed, are not disputed. On April 21, 1984, plaintiff Lora Bruner was seriously injured when she was struck by a hit-and-run driver as she walked along Union Lake Road in Commerce Township, Oakland County. At the time of the accident, Lora Bruner was insured under a no-fault automobile policy issued by defendant to her husband, plaintiff Thomas Bruner. The policy had been renewed in March of each

* Circuit judge, sitting on the Court of Appeals by assignment.

year since 1975. Each year, plaintiffs received a declaration page from defendant specifying the coverage afforded under the policy. The 1980 declaration page deleted coverage for uninsured motorist protection and included the following notation in bold print at the bottom of the page:

> Uninsured motorists coverage has been removed from your policy. It is available on request. See enclosed letter for more information.

The letter enclosed with the 1980 declaration page stated, in pertinent part:

> Because Uninsured Motorist Insurance is no longer required in Michigan, we have not included it in your renewal policy. Your premium has been reduced by the cost of the Uninsured Motorists coverage.
>
> This coverage is no longer required because of the extensive medical and rehabilitation benefits which your Personal Injury Protection coverage pays to you, a member of your family or a passenger in your car who is injured in an auto accident —regardless of who causes the accident.
>
> Although not automatically included, Uninsured Motorists coverage is available. Please phone us, at the number on the enclosed card, for the price and other details.

The policy in effect at the time Lora Bruner was injured in 1984 did not include uninsured motorist coverage, plaintiffs' never having requested that protection. In her deposition, Lora Bruner acknowledged having received and retained the letter that was enclosed with her 1980 declaration page. She expressed her own astonishment at having retained the letter, the contents of which she did not understand, echoing Casca's comment in

Shakespeare's *Julius Caesar* regarding Cicero's speech that "it was all Greek to me."

Defendant filed its motion for summary disposition under MCR 2.116(C)(8), failure to state a claim on which relief can be granted, and MCR 2.116(C)(10), no genuine issue as to any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. Neither in the hearing nor in the consequent written order was it specifically stated under which subrule summary disposition was granted—a practice we especially discourage. Our review of the hearing transcript suggests that MCR 2.116(C)(10) was relied upon. In deciding a motion under that provision, the trial judge must consider the pleadings, affidavits, and other available evidence, and be satisfied that the claim or position asserted cannot be supported by evidence at trial due to some deficiency which cannot be overcome. *Hagerl v Auto Club Group Ins Co,* 157 Mich App 684; 403 NW2d 197 (1987). The test is whether the record which might be developed, giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ. *Rizzo v Kretschmer,* 389 Mich 363, 371-373; 207 NW2d 316 (1973). The lower court will be affirmed where no factual development could justify recovery by the nonmoving party. *League Life Ins Co v White,* 136 Mich App 150, 152; 356 NW2d 12 (1984).

Generally, an insurance agent does not have an affirmative duty to advise a client regarding the adequacy of a policy's coverage. Instead, the insured is obligated to read the policy and raise questions concerning coverage within a reasonable time after issuance. *Parmet Homes v Republic Ins Co,* 111 Mich App 140, 144-145; 314 NW2d 453 (1981), lv den 415 Mich 851 (1982). However, a

duty to advise may arise when a "special relationship" exists between the insurance company or its agent and the policyholder. Where such a duty has been breached, liability may be based thereon. *Palmer v Pacific Indemnity Co,* 74 Mich App 259; 254 NW2d 52 (1977), lv den 401 Mich 808 (1977); *Stein v Continental Casualty Co,* 110 Mich App 410; 313 NW2d 299 (1981), lv den 414 Mich 853 (1982).

In *Stein,* plaintiffs began an architectural and engineering business and, between 1964 and 1969, contracted with the Mourer-Foster Insurance Agency for a "claims made" professional liability insurance policy with defendant Continental Casualty Company. Under a claims made policy, an insured party must maintain continuous coverage in order to have protection against liability for malpractice if the claim is not made in the same policy year in which the alleged negligence occurred. Plaintiffs allowed their policy to lapse between 1969 and 1971, but renewed their contract in 1971. However, upon renewing, they were not informed of the consequences of having cancelled their insurance in 1969 and were not informed that a "prior acts" endorsement was available when they renewed their insurance in 1971. This Court affirmed the trial court's conclusion that a special relationship existed between the parties, emphasizing the following:

> In the instant case, the evidence established that the Mourer-Foster Insurance Agency had handled all of plaintiffs' insurance needs, including their malpractice insurance, for 10 years. The evidence also established that Mourer-Foster was an agent of defendant, Continental. From 1962 until 1969, plaintiffs bought their malpractice insurance from Continental through Mourer-Foster. When plaintiffs elected not to renew their malpractice insur-

ance, Mourer-Foster failed to inform them of the consequences of their failure to renew. In 1971, plaintiffs decided to renew their malpractice insurance *asking Mourer-Foster to obtain a policy which would cover them against all liabilities.* Mourer-Foster insured plaintiffs with Continental but failed to inform plaintiffs of Continental's prior acts endorsement which would have protected them in the Bank of Lansing action. [Emphasis added. 110 Mich App 417-418.]

In *Palmer,* the plaintiff had professional malpractice coverage of $10,000 with an insurer through defendant Nettleship Company—an insurance agency specializing in professional malpractice insurance. Plaintiff had been a client of Nettleship Company for approximately thirty years. After being sued and sustaining liability for $82,000, plaintiff argued that the insurer and Nettleship were liable for the excess of the judgment over the insurance coverage of $10,000 because he never received any advice indicating that his coverage was inadequate or that he should have had more coverage. This Court found that, because there was evidence of a special relationship between Nettleship Company and the plaintiff, the trial court properly denied the former's motion for a directed verdict. The *Palmer* Court stated:

In this case, there was evidence of a special relationship between Nettleship and the plaintiff Palmer. The defendant was the sponsored insurance representative of the National Osteopathic Association and held itself out as an expert in the field of medical and professional malpractice insurance. Palmer had been a client for approximately 30 years. Given this, a fact situation was created regarding the question whether a special relationship existed and it would have been improper for the trial court to grant a directed verdict in favor of Nettleship. [74 Mich App 267.]

While it is perhaps difficult to derive any absolute rule of law from these cases, it is apparent that something more than the standard policyholder-insurer relationship is required in order to create a question of fact as to the existence of a "special relationship" obligating the insurer to advise the policyholder about his or her insurance coverage. There must be, in a long-standing relationship, some type of interaction on a question of coverage, with the insured relying on the expertise of the insurance agent to the insured's detriment. In the instant case, plaintiffs have not alleged any facts suggesting that their relationship with defendant was anything other than a standard one. In separate affidavits, plaintiffs allege only that they had placed their total trust in defendant to determine the appropriate coverages for their vehicles and that defendant never explained to them the nominal costs involved in maintaining uninsured motorist coverage. There was no allegation that plaintiffs requested, expected, or relied upon defendant to provide protection against uninsured motorists. Plaintiffs did not even go so far after receiving the 1980 letter as to contact defendant and request that their policy be enlarged to provide protection against all liabilities. A question of fact might have existed had plaintiffs contacted defendant following the 1980 letter and inquired about uninsured motorist coverage, but had not been advised about the nature and cost of such coverage, or had been advised against obtaining that coverage. In such a scenario, plaintiffs would have clearly relied upon the expertise of defendant in the area of automobile insurance, and defendant would have at least been alerted that plaintiffs harbored some concerns about the completeness and extent of the protection afforded them under their no-fault insurance policy. This, however, did not occur.

Thus, since plaintiffs have failed to set forth in their pleadings, affidavits, or other documentary evidence any facts that could possibly establish a special relationship between plaintiffs and defendant, we conclude that the trial court did not err in granting summary disposition in favor of defendant under MCR 2.116(C)(10). Accordingly, the trial court's July 16, 1986, order for summary disposition is affirmed.

Affirmed. Costs to neither party.